# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| William H., and J.H., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED HEALTHCARE INSURANCE COMPANY, UNITED BEHAVIORAL HEALTH, SPLUNK INC., and the SPLUNK INC. MEDICAL PLAN, <br><br> Defendants. | **MEMORANDUM DECISION AND ORDER** <br><br> Case No. 2:24-cv-00531-RJS-DBP <br><br> Chief Judge Robert J. Shelby <br><br> Chief Magistrate Judge Dustin B. Pead |

Before the court are Defendants United Healthcare Insurance Company (UHIC) and United Behavioral Health (UBH)'s Motion to Dismiss[1] and Defendants Splunk Inc. and the Splunk Inc. Medical Plan (the Plan)'s Motion to Dismiss.[2]  For the reasons stated below, the court DENIES Defendants' Motions.

## BACKGROUND[3]

This case arises under the Employee Retirement Income Security Act of 1974 (ERISA).[4] Plaintiffs William H. and J.H. live in Santa Clara County, California.[5]  William is J.H.'s father.[6]

---

[1] Dkt. 33, *Motion to Dismiss and Incorporated Memorandum of Law in Support* (*United's Motion*).  The court refers to UHIC and UBH collectively as "United."

[2] Dkt. 35, *Motion to Dismiss and Incorporated Memorandum of Law in Support by Defendants Splunk Inc. and Splunk Inc. Employee Benefits Plan* (*Splunk's Motion*).  Splunk and the Splunk Inc. Medical Plan join United's Motion in full.  *Id.*

[3] Because this case is before the court on a motion to dismiss, it accepts as true all well-pleaded factual allegations contained in the Complaint.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).

[4] Dkt. 1, *Complaint*.

[5] *Id.* ¶ 1.

[6] *Id.*

1

The Plan is a self-funded employee welfare benefits plan governed by ERISA.[7] William was a participant in the Plan, with J.H. as a beneficiary.[8] Splunk is the Plan Administrator, and UHIC is the Plan's Claims Administrator.[9] Plaintiffs allege "United acted as agent for the Plan and the Plan Administrator" at all relevant times.[10]

In April 2015, J.H. began experiencing hallucinations, seizures, and headaches.[11] After being hospitalized, medical professionals located a large mass in his brain, which they surgically removed.[12] Over the next several years, J.H. continued to experience pain, seizures, and other signs of psychosis that his medical team wrongfully attributed to schizophrenia; these symptoms were in fact caused by medication.[13] J.H. later developed depression and anxiety, and he turned to alcohol and drug use as a result.[14] After outpatient treatment was unsuccessful, J.H. was admitted on July 30, 2020 to BlueFire Wilderness Therapy, a facility in Idaho, where he received treatment until October 28, 2020.[15] On October 29, 2020, J.H. was admitted to Crossroads Academy, a facility in Utah, where he received treatment until July 30, 2021.[16] Both facilities "provide sub-acute inpatient treatment to adolescents with mental health, behavioral, and/or substance abuse problems."[17]

---

[7] *Id.* ¶ 5.
[8] *Id.*
[9] *Id.* at 1 & ¶ 2.
[10] *Id.* ¶ 3.
[11] *Id.* ¶ 12.
[12] *Id.*
[13] *Id.* ¶ 13.
[14] *Id.* ¶¶ 13–14.
[15] *Id.* ¶¶ 6, 15.
[16] *Id.* ¶¶ 6, 42.
[17] *Id.* ¶ 6.

Plaintiffs allege J.H.'s treatment "satisf[ied] the requirements listed in the 'Covered Services, Mental Health Services' section" of the Plan's benefits booklet.[18] The benefits booklet stated:

> Mental Health Services include those received on an inpatient or outpatient basis in a Hospital and an Alternate Facility or in a provider's office. All services must be provided by or under the direction of a properly qualified behavioral health provider.
>
> Benefits include the following levels of care:
> - Inpatient treatment.
> - Residential Treatment.
> - Partial Hospitalization/Day Treatment.
> - Intensive Outpatient Treatment.
> - Outpatient treatment.
>
> Services include the following:
> - Diagnostic evaluations, assessment and treatment planning.
> - Treatment and/or procedures.
> - Medication management and other associated treatments.
> - Individual, family, and group therapy.
> - Provider-based case management services.
> - Crisis intervention.
>
> The Mental Health/Substance-Related and Addictive Disorders Services Administrator provides administrative services for all levels of care. You are encouraged to contact the Mental Health/Substance-Related and Addictive Disorders Services Administrator for referrals to providers and coordination of care.
>
> An "Alternate Facility" [is] "a health care facility that is not a Hospital and that provides one or more of the following services on an outpatient basis, as permitted by law:
>
> - Surgical services.
> - Emergency Health Services.
> - Rehabilitative, laboratory, diagnostic or therapeutic services.

---

[18] *Id.* ¶¶ 18, 21, 54.

> An Alternate Facility may also provide Mental Health Services or Substance-Related and Addictive Disorders Services on an outpatient basis or inpatient basis (for example a Residential Treatment Facility).[19]

United denied claims for J.H.'s treatment at BlueFire and Crossroads.[20] In an appeal of this denial, J.H.'s mother requested "a copy of all documents under which the Plan was operated," including "any administrative service agreements."[21] After United upheld its denial, J.H.'s mother again requested Plan documents from United.[22] On May 21, 2024, William sent an additional letter to the Plan Administrator requesting Plan documents, including "any and all administrative service agreements, contracts or other documents which described and defined the relationship, rights and obligations of and between you, the plan administrator, and Optum and United Healthcare Insurance Company."[23] Plaintiffs never received a response to any of the three document requests.[24]

Plaintiffs further allege United improperly used "more stringent or restrictive" criteria to evaluate J.H.'s claim for treatment at BlueFire than it uses to evaluate "analogous intermediate levels of medical or surgical benefits."[25] According to Plaintiffs, "[c]omparable benefits offered by the Plan for medical/surgical treatment analogous to the benefits the Plan excluded for J.H.'s treatment at BlueFire include sub-acute inpatient treatment settings such as skilled nursing facilities, inpatient hospice care, and rehabilitation facilities."[26]

---

[19] *Id.* ¶¶ 22–23.

[20] *Id.* ¶ 7.

[21] *Id.* ¶ 29.

[22] *Id.* ¶¶ 30–31, 40.

[23] *Id.* ¶ 61.

[24] *Id.* ¶ 62.

[25] *Id.* ¶ 78.

[26] *Id.* ¶ 79.

On July 29, 2024, Plaintiffs filed a Complaint asserting three causes of action under ERISA.[27] First, Plaintiffs seek recovery of benefits under Section 502(a)(1)(B), arguing United and the Plan breached their fiduciary duties in denying benefits for J.H.'s treatments at BlueFire and Crossroads.[28] Second, Plaintiffs seek redress under Section 502(a)(3), arguing United and the Plan violated the Mental Health Parity and Addiction Equity Act (Parity Act) in denying benefits for J.H.'s treatment at BlueFire.[29] And third, Plaintiffs seek statutory penalties from Splunk as the Plan Administrator under Sections 502(a)(1)(A) and (c) for failing to provide Plan documents on request.[30]

On February 18, 2025, Defendants filed their Motions seeking to dismiss Plaintiffs' Complaint under Federal Rule of Civil Procedure 12(b)(6).[31] The Motions are fully briefed and ripe for review.[32]

## LEGAL STANDARD

Under Rule 12(b)(6), the court must dismiss a cause of action that "fail[s] to state a claim upon which relief can be granted."[33] To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

---

[27] Dkt. 1, *Complaint*.

[28] *Complaint* at ¶¶ 65–73. The court refers to ERISA sections by the named section in the statute rather than the section as codified, for concision as well as for consistency when referring to case law. Accordingly, the court refers to ERISA's monetary relief provision as Section 502(a)(1)(B) (codified at 29 U.S.C. § 1132(a)(1)(B)), equitable relief provision as Section 502(a)(3) (codified at 29 U.S.C. § 1132(a)(3)), and statutory penalty provisions as Sections 502(a)(1)(A) and (c) (codified at 29 U.S.C. §§ 1132(a)(1)(A), (c)).

[29] *Complaint* at ¶¶ 74–88.

[30] *Complaint* at ¶¶ 89–94.

[31] *United's Motion*; *Splunk's Motion*.

[32] Dkt. 39, *Opposition to Defendants' Motion to Dismiss* (*Opposition*); Dkt. 44, *Defendants' Reply in Support of Motion to Dismiss* (*Reply*); Dkt. 46, *Reply Memorandum in Support of Motion to Dismiss* (*Splunk's Reply*).

[33] Fed. R. Civ. P. 12(b)(6).

face.'"[34] A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[35] "Though a complaint need not provide 'detailed factual allegations,' it must give just enough factual detail to provide 'fair notice of what the . . . claim is and the grounds upon which it rests.'"[36] The court will not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."[37] The court views the evidence "in the light most favorable to the nonmoving party"[38] and considers whether a complaint "taken as a whole" entitles a plaintiff to relief.[39]

## ANALYSIS

Defendants seek dismissal of the Complaint for failure to state a claim under Rule 12(b)(6). Because the court finds Plaintiffs have adequately pleaded each of their claims, the court will deny the Motions. The court addresses each cause of action in turn.

### I. Recovery of Benefits Claim

Plaintiffs seek recovery of benefits under ERISA Section 502(a)(1)(B).[40] Section 502(a)(1)(B) authorizes a plan "participant or beneficiary" to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."[41]

---

[34] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

[35] *Id.* (citing *Twombly*, 550 U.S. at 556).

[36] *Warnick v. Cooley*, 895 F.3d 746, 751 (10th Cir. 2018) (alteration in original) (quoting *Twombly*, 550 U.S. at 555).

[37] *Iqbal*, 556 U.S. at 678.

[38] *Sinclair Wyo. Ref. Co. v. A & B Builders, Ltd.*, 989 F.3d 747, 765 (10th Cir. 2021) (quotation omitted).

[39] *U.S. ex rel. Lemmon v. Envirocare of Utah, Inc.*, 614 F.3d 1163, 1173 (10th Cir. 2010) (citing *Twombly*, 550 U.S. at 554–56).

[40] *Complaint* ¶¶ 65–73.

[41] 29 U.S.C. § 1132(a)(1)(B).

Defendants argue the court should dismiss Plaintiffs' Section 502(a)(1)(B) claim because Plaintiffs have not alleged "sufficient facts to allow the court to reasonably infer that the terms of the plan require benefits to be paid."[42]  Defendants offer two arguments in support.  First, "Plaintiffs fail to refer to any specific provision or provisions in the Plan allegedly violated by United," which is a requirement to state a plausible claim for relief.[43]  That is, "if the benefits in question do not arise under the terms of the plan, the plaintiff has no [Section 502(a)(1)(B)] claim."[44]  Second, Defendants affirmatively argue the Plan did not provide coverage for treatment at BlueFire in part because the treatment was "unproven or experimental."[45]

In response to Defendants' first argument, Plaintiffs contend they have plausibly alleged J.H. was entitled to benefits under the Plan because they allege J.H.'s treatments satisfied the Plan's Mental Health Services provisions.[46]  The court agrees.  Plaintiffs allege J.H.'s treatment at BlueFire "did satisfy the requirements listed in the 'Covered Services, Mental Health Services' section of [the] benefits booklet" and his treatment at Crossroads was "medically necessary" under the Plan and otherwise satisfied the criteria United purportedly used when denying coverage.[47]  The court is unclear how Plaintiffs could have more plainly articulated the Plan provisions Defendants allegedly violated.  As to Defendants' second argument, the court finds Plaintiffs adequately allege facts which, if assumed to be true, show J.H.'s treatment did not fall

---

[42] *United's Motion* at 6.

[43] *Id.* (citing *IHC Health Serv., Inc. v. Cent. States, Se. & Sw. Areas Health & Welfare Fund*, No. 2:17-cv-01327-JNP-BCW, 2018 WL 3756959, at *2–3 (D. Utah Aug. 8, 2018)).

[44] *IHC Health Serv.*, 2018 WL 3756959, at *3.

[45] *United's Motion* at 6–7.  Defendants do not explicitly argue the Plan does not cover treatment at Crossroads, *see id.*, but the court assumes for the purpose of deciding the Motions that they make that argument.

[46] *See Opposition* at 4, 7 (first citing *Complaint* ¶¶ 21–23 (BlueFire); and then citing *Complaint* ¶¶ 47–54 (Crossroads)).

[47] *Complaint* ¶¶ 21–23, 47–54.

under the Plan's definition of experimental care.[48] While Defendants contest Plaintiffs' allegations, the court must accept as true all well-pleaded facts in the Complaint.[49] Accordingly, the court finds Plaintiffs have adequately pleaded entitlement to benefits under the Plan and therefore denies Defendants' Motions with respect to Plaintiffs' first cause of action.

## II.   Parity Act Claim

The Parity Act is an amendment to ERISA.[50] Designed "to end discrimination in the provision of insurance coverage for mental health and substance use disorders as compared to coverage for medical and surgical conditions in employer-sponsored group health plans,"[51] the Parity Act prohibits insurance plans from imposing more coverage restrictions on mental health or substance use disorder benefits than they impose on medical or surgical benefits.[52] Relevant here, the Parity Act prohibits insurers from imposing "treatment limitations" on mental health or substance abuse claims that are more stringent than the treatment limitations imposed on medical or surgical claims.[53]

Treatment limitations can come in one of two forms: quantitative and nonquantitative.[54] Quantitative treatment limitations are expressed numerically and include treatment limitations

---

[48] *See Complaint* ¶ 35 ([J.H.'s mother] argued that the definition of experimental or investigational services in her benefits booklet did not appear to apply to J.H.'s treatment.); *id.* ¶ 38 ("[J.H.'s mother] also included decisions from external review agencies which further refuted United's contention that wilderness care was experimental or investigational.  She also claimed that the treatment at BlueFire was rendered in accordance with the definition of medically necessary care in her benefits booklet."); *id.* ¶ 54 ("[J.H.'s mother] argued that J.H.'s treatment [at Crossroads] did satisfy the requirements in the criteria United alleged to have used . . . .").

[49] *See Twombly*, 550 U.S. at 555–56.

[50] 29 U.S.C. § 1185a.

[51] *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 356 (2d Cir. 2016).

[52] 29 U.S.C. § 1185a(a)(3)(A).

[53] *See Michael D. v. Anthem Health Plans of Ky. Inc.*, 369 F. Supp. 3d 1159, 1174 (D. Utah 2019).

[54] *See* 29 C.F.R. § 2590.712(a) (2024).

such as "50 outpatient visits per year."[55] Nonquantitative treatment limitations are non-numerical treatment limitations that "otherwise limit the scope or duration of benefits for treatment under a plan."[56] An insurer violates the Parity Act if it employs "a nonquantitative limitation for mental health treatment that is more restrictive than the nonquantitative limitation applied to medical health treatments."[57]

In *E.W. v. Health Net Life Insurance Company*, the Tenth Circuit recognized no binding precedent established a test for evaluating Parity Act claims.[58] It used a test agreed to by the parties, which itself drew on tests employed by district courts. The Tenth Circuit determined, to establish a Parity Act claim, a plaintiff must:

> (1) plausibly allege that the relevant group health plan is subject to [the Parity Act];
> (2) identify a specific treatment limitation on mental health or substance-use disorder benefits covered by the plan;
> (3) identify medical or surgical care covered by the plan that is analogous to the mental health or substance-use disorder care for which the plaintiffs seek benefits; and
> (4) plausibly allege a disparity between the treatment limitation on mental health or substance-use disorder benefits as compared to the limitations that defendants would apply to the medical or surgical analog.[59]

Under this test, a plaintiff can assert a Parity Act violation as a facial challenge or an as-applied one.[60] A facial challenge is based on the express terms of the plan, while an as-applied challenge is based on the plan administrator's application of the plan.[61]

---

[55] *Id.*

[56] *Id.*

[57] *David S. v. United Healthcare Ins. Co.*, No. 2:18-cv-00803, 2019 WL 4393341, at *3 (D. Utah Sept. 13, 2019).

[58] *E.W. v. Health Net Life Ins. Co.*, 86 F.4th 1265, 1281–82 (10th Cir. 2023).

[59] *Id.* at 1283 (10th Cir. 2023) (citation modified). While the Tenth Circuit declined to categorically apply this test to all Parity Act claims, district courts have relied on the Tenth Circuit's reasoning in subsequent cases. *See, e.g.*, *J.S. v. Blue Cross Blue Shield of Illinois*, No. 2:22-cv-00480, 2024 WL 4308925, at *2 (D. Utah Sept. 26, 2024).

[60] *E.W.*, 86 F.4th at 1284.

[61] *J.L. v. Anthem Blue Cross*, No. 2:18-cv-00671, 2019 WL 4393318, at *2 (D. Utah Sept. 13, 2019).

Plaintiffs' Parity Act claim concerns only United's denial of benefits for J.H.'s treatment at BlueFire.[62] Defendants argue Plaintiffs have failed to plead with sufficient specificity that United treated J.H.'s claim for mental health benefits differently from analogous medical benefits.[63] The Tenth Circuit considered a similar argument in *E.W.*[64] In that case, Defendants argued the plaintiffs' allegations were conclusory and lacked sufficient facts to survive a motion to dismiss.[65] The court disagreed and held it must accept as true an allegation that the defendant "applied acute-care medical necessity criteria to benefits for mental health treatment while applying subacute criteria to benefits for medical or surgical treatment."[66] There, the defendant's "refusal to provide the medical necessity criteria Plaintiffs requested" further reinforced the court's holding because "there is no reason why Plaintiffs should have known the specific criteria" the defendant applied absent production of "the relevant information."[67]

Relying on *E.W.*, the court finds Plaintiffs have adequately pleaded each element of a Parity Act claim. First, there is no dispute the Plan is subject to the Parity Act. Second, Plaintiffs have identified the relevant treatment limitations as the criteria used to evaluate "medical necessity" and "facility eligibility."[68] Third, Plaintiffs have identified care provided at "[inpatient] skilled nursing facilities, inpatient hospice care, and rehabilitation facilities" as

---

[62] *See Opposition* at 10 n.34. The parties do not address whether Plaintiffs assert a facial or an as-applied challenge. *See id.*; *United's Motion*; *Reply*. The court assumes without deciding that Plaintiffs have asserted an as-applied challenge, rendering it unnecessary to determine the viability of a facial challenge. *See E.W.*, 86 F.4th at 1285.

[63] *United's Motion* at 10.

[64] *E.W.*, 86 F.4th at 1289–91.

[65] *Id.* at 1289.

[66] *Id.* at 1290 n.4.

[67] *Id.* at 1291 (citation modified).

[68] *See Complaint* ¶ 78.

medical care analogous to J.H.'s treatment at BlueFire.[69] And fourth, like the plaintiffs in *E.W.*, Plaintiffs here have plausibly alleged two disparities: (1) United denied benefits for BlueFire because the facility offered "experimental" treatment but does not deny claims for medical treatment received at analogous facilities on that basis, and (2) United used more stringent guidelines to evaluate the medical necessity of J.H.'s treatment at BlueFire than it uses for analogous facilities.[70] Here, Plaintiffs have gone beyond restating the elements of a Parity Act claim by alleging specific facts.[71] To the extent Defendants take issue with Plaintiffs' failure to allege with additional specificity their Parity Act violations, the court finds Plaintiffs' allegation that "[J.H.'s parents] asked for information to allege a violation of [the Parity Act] with more specificity but did not receive it" further supports a finding that Plaintiffs have adequately pleaded a Parity Act claim,[72] just as in *E.W.*

### III. Statutory Penalties Claim

Plaintiffs' third cause of action seeks an award of statutory penalties under 29 U.S.C. § 1132(c) from Splunk for Defendants' failure to produce documents under which the Plan operated.[73] This is a "penalty provision" that applies when a court finds a violation of 29 U.S.C. § 1024, one of ERISA's disclosure provisions.[74] Section 1024(b)(4) requires plan

---

[69] *Id.* ¶ 79; *see also E.W.*, 86 F.4th at 1287 (holding plaintiffs plausibly alleged "inpatient skilled nursing facilities" are analogous to mental health care provided in a "residential treatment center").

[70] *See* Complaint ¶¶ 78–83. In opposition, Plaintiffs argue they allege a third disparity: United's denial of benefits for J.H.'s treatment at BlueFire relied on a lack of acute symptoms, which it does not require for covering treatment at analogous sub-acute medical facilities. *See* Opposition at 12. In reply, Defendants contend Plaintiffs' third theory of liability is not present in the Complaint. *Reply* at 4. The court agrees with Defendants and finds Plaintiffs failed to plead sufficient facts to support this theory of liability in their Complaint.

[71] *See E.W.*, 86 F.4th at 1290 (explaining an allegation of "a specific characteristic of the criteria [a defendant] applies to certain medical or surgical treatments" is entitled to "the presumption of truth that attaches to factual allegations" "without requiring any further detail or substantiation").

[72] *Complaint* ¶ 84.

[73] *Id.* ¶¶ 89–94.

[74] *Moothart v. Bell*, 21 F.3d 1499, 1503 (10th Cir. 1994).

administrators to provide participants with certain documents if the participant requests them in writing.[75] These documents include "a copy of the latest updated summary[] plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated."[76] When a plan administrator does not furnish the documents within thirty days of the written request, a court may impose statutory penalties "up to $100 a day from the date of such failure or refusal and other relief as [the court] deems proper."[77] A plaintiff may only seek an award of statutory penalties from a plan administrator.[78]

Plaintiffs allege they sent two written requests to United and one written request to Splunk.[79] But Plaintiffs never received a response to the requests.[80] Plaintiffs seek statutory penalties from Splunk for each failure to provide the requested documents.[81] While Plaintiffs' request for statutory penalties from Splunk for *its* failure to provide documents is straightforward and not meaningfully contested by Defendants,[82] whether Splunk is liable for *United's* failure to provide documents requires further examination. Plaintiffs argue Splunk is exposed to liability

---

[75] 29 U.S.C. § 1024(b)(4).

[76] *Id.*

[77] *E.W.*, 86 F.4th at 1291 n.5 (10th Cir. 2023) (citation modified) (quoting 29 U.S.C. § 1132(c)(1)).

[78] *Thorpe v. Ret. Plan of Pillsbury Co.*, 80 F.3d 439, 444 (10th Cir. 1996) (holding a statutory penalties claim may only be brought against a plan administrator).

[79] *Complaint* ¶¶ 29, 40, 61.

[80] *Id.* ¶ 62.

[81] *See id.* ¶¶ 89–94.

[82] United's Motion does not address the documents request sent directly to Splunk. *See United's Motion* at 11–12. Splunk's Motion to Dismiss impliedly acknowledges liability for the request Plaintiffs sent to it. *See Splunk's Motion* at 2 ("Splunk submits that to the extent Plaintiffs allege that document requests were not made directly to Splunk, those requests would not cause a claim for penalties to accrue against Splunk.").

for United's failure to provide the requested documents because United acted as Splunk's agent.[83]

Defendants argue Plaintiffs' statutory penalties claim must be dismissed as to United because it is not the plan administrator—Splunk is.[84] The court finds there is no such claim to dismiss because the Complaint only asserts a claim for statutory penalties against Splunk.[85] Defendants further contend Plaintiffs' agency theory "has been universally rejected by courts," including in this District.[86] Defendants argue the court may not impute United's actions to Splunk because Plaintiffs allege no agency relationship between them and the entities are otherwise separate companies.[87]

In response, Plaintiffs contend no binding authority requires the court to dismiss its claim against Splunk for the two requests sent to United and direct the court to additional cases standing for the proposition that the court may impute an agent's actions to a plan administrator.[88] In addition, Plaintiffs argue Defendants have withheld evidence that, once produced in discovery, will establish the very agency relationship they allege exists.[89]

---

[83] *See Opposition* at 13–16.

[84] *United's Motion* at 11.

[85] *See Complaint* at 21–22.

[86] *United's Motion* at 11–12.

[87] *See id.* (citing *David P. v. United Healthcare Ins. Co.*, No. 2:19-cv-00225-JNP-PMW, 2020 WL 607620, at *20 (D. Utah Feb. 7, 2020); *L.L. v. Anthem Blue Cross Life & Health Ins.*, 661 F. Supp. 3d 1106, 1114 (D. Utah 2023); *Thorpe v. Ret. Plan of Pillsbury Co.*, 80 F.3d 439, 444 (10th Cir. 1996); *M.R. v. United Healthcare Ins. Co.*, No. 23-CV-04748-GHW-GS, 2023 WL 8178646, at *19 (S.D.N.Y. Nov. 20, 2023), *report and recommendation adopted*, No. 1:23-CV-4748-GHW, 2024 WL 863704 (S.D.N.Y. Feb. 29, 2024); *Innovations Surgery Ctr., P.C. v. United Healthcare Ins. Co.*, 722 F. Supp. 3d 582, 597 (D. Md. 2024)).

[88] *Opposition* at 13–16.

[89] *Id.* at 14 n.49 (citing *M.S. v. Premera Blue Cross*, 118 F.4th 1248, 1265–69 (10th Cir. 2024) (holding ERISA requires disclosure of administrative services agreements)).

The court agrees with Plaintiffs. While the case law is clear that only a plan administrator is liable for a failure to respond to a documents request,[90] Plaintiffs are correct that under the appropriate circumstances an administrator may be liable for the actions of others.[91] The cases cited by Defendants either do not refute this conclusion or are not binding on this court.[92] Accepting as true all well-pleaded factual allegations, and considering the Complaint as a whole, the court finds Plaintiffs' have adequately pleaded United acted as Splunk's agent.[93]

For example, Plaintiffs allege UBH "administers the mental health and substance use disorder benefits for the Plan" and "was closely involved in the processing of the claims and appeals relevant to this case."[94] The court can reasonably infer from these facts that United acted as Splunk's agent when it failed to provide the requested Plan documents. The court also finds persuasive that (1) Plaintiffs argue an undisclosed administrative services agreement will provide additional factual support for their claim that United acted as Splunk's agent,[95] (2) plan

---

[90] *Thorpe*, 80 F.3d at 444.

[91] *See Wilcott v. Matlack, Inc.*, 64 F.3d 1458, 1461 (10th Cir. 1995) ("Under appropriate circumstances, a § 1132(c) penalty may be based on information requests . . . that were not directed to the plan administrator."); *McKinsey v. Sentry Ins.*, 986 F.2d 401, 404 (10th Cir. 1993) (If in practice, company personnel other than the plan administrator routinely assume responsibility for answering requests from plan participants and beneficiaries . . . the actions of the other employees may be imputed to the plan administrator."); *Boone v. Leavenworth Anesthesia, Inc.*, 20 F.3d 1108, 1109–10 n.2 (10th Cir. 1994) (holding a letter sent to the plan administrator's counsel was a "sufficient written request").

[92] *David P.*, 2020 WL 607620, at *20 (conclusory allegations insufficient to establish agency relationship at summary judgment); *L.L*, 661 F. Supp. 3d at 1114 (finding insufficient factual allegations to support an agency relationship); *Thorpe*, 80 F.3d at 444 (affirming dismissal of claims against non-plan administrator defendants); *Innovations*, 722 F. Supp. 3d at 596–97 (dismissing penalties claim but not evaluating agency theory). One unpublished, out-of-Circuit decision rejected the agency theory on similar facts as presented here. *See M.R.*, 2023 WL 8178646, at *19. But the court finds *M.R.* unpersuasive because it relied on Second Circuit precedent at odds with *Wilcott*, *McKinsey*, and *Boone* to reject the agency theory. *See M.R.*, 2023 WL 8178646, at *20.

[93] *See also Julian B. v. Regence Blue Cross & Blue Shield of Utah*, No. 2:19-CV-471-TC, 2020 WL 1955222, at *6 (D. Utah Apr. 23, 2020) (denying a motion to dismiss a statutory penalties claim because plaintiffs adequately alleged a claims administrator acted as a plan administrator's agent).

[94] *Complaint* ¶ 2.

[95] *Opposition* at 14 n.49.

administrators are legally obligated to produce administrative services agreements,[96] and (3) Splunk failed to do so.[97] Given this context, it would be improper to reward Splunk's alleged failure to provide the administrative services agreement by dismissing Plaintiffs' agency theory at this stage of the proceedings.[98]

## CONCLUSION

For the reasons explained above, the court DENIES Defendants' Motions to Dismiss.[99]

SO ORDERED this 1st day of August 2025.

BY THE COURT:

ROBERT J. SHELBY
United States Chief District Judge

---

[96] *See M.S.*, 118 F.4th at 1265–69.

[97] *Complaint* ¶ 62.

[98] *See, e.g.*, *Klassen v. Solid Quote LLC*, 702 F. Supp. 3d 1052, 1058–59 (D. Colo. 2023) (discussing why it would be "impossible" for a plaintiff to allege more specific facts at the pleading stage given the "information asymmetry" between the parties).

[99] Dkts. 33, 35.